IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | |
| DIANA FRANCES ROSATI | NO. 11-329-2 |

**DuBOIS, J.**                                                                 November 16, 2011

**M E M O R A N D U M**

## I. INTRODUCTION

On June 15, 2011, a grand jury returned a one-count indictment against Diana Frances Rosati and two co-defendants. The indictment charges the three defendants with conspiracy to distribute a controlled substance and acquire a controlled substance by misrepresentation and forgery in violation of 21 U.S.C. § 846.

On June 20, 2011, United States Magistrate Judge M. Faith Angell ordered defendant Rosati detained pending her placement in a dual-diagnosis residential treatment program. Pursuant to that order, defendant was placed at Gaudenzia Together House ("Gaudenzia") in Philadelphia on June 29, 2011. However, on September 13, 2011, Gaudenzia staff discharged her after learning that she had participated in the purchase of heroin and brought heroin into the Gaudenzia facility. That day, after hearing argument from the government and defendant's counsel, Chief United States Magistrate Judge Thomas J. Rueter revoked defendant's pretrial release and detained her pending further proceedings.

Presently before the Court is defendant's Motion to Set Bail and to Vacate Order Granting Government's Motion for Detention. Defendant contends that pretrial release is

appropriate because (1) she must care for her ill father and her young son and (2) her father is willing to post his house as collateral.

The Court conducted a hearing on defendant's motion on November 10, 2011. At the hearing, the Court admitted into evidence a discharge summary completed by Gaudenzia staff and a September 13, 2011, memorandum by Pretrial Services Officer Rocky Reyes. In addition, defendant's father, George Bahr, and Gaudenzia counselor Claudia DeForest testified and were subject to cross-examination. At the conclusion of the hearing, the Court denied defendant's motion. This Memorandum amplifies the bases for the denial.

## II. LEGAL STANDARD

The Court applies the standard set forth in 18 U.S.C. § 3142 to the present motion for pretrial release. When a defendant's bail has been revoked or denied and she moves for reconsideration or files a renewed motion, a court uses the same standards that apply to a motion for release in the first instance. See United States v. Brownlee, No. 11-101, 2011 WL 2181472, at *1-2 (W.D. Pa. June 2, 2011) (applying 18 U.S.C. § 3142 in deciding a defendant's motion to reconsider denial of bail); United States v. Concepcion, No. 95-624, 1996 WL 146107, at *1-2 (E.D. Pa. Apr. 1, 1996) (applying 18 U.S.C. § 3148 in deciding a defendant's motion to reconsider revocation of bail).

Section 3142(e) provides that if a "judicial officer finds that no condition or combination of conditions [of pretrial release] will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

## III. FINDINGS OF FACT

Having reviewed the parties' submissions and the transcript of the September 13, 2011, hearing before Chief Magistrate Judge Rueter, and after conducting an evidentiary hearing on November 10, 2011, the Court makes the following findings of fact:

1. The indictment charges defendant Rosati and her co-defendants Patrick William Swint and Kevin Joseph Fetrow with conspiring to use forged prescriptions to obtain oxycodone, an opiate pain reliever, and distribute it for a profit. The government has strong evidence of defendant's guilt, including the following[1]:

    a. Sworn statements by individuals whom defendants recruited to fill the forged prescriptions and return the pills to Rosati and/or Swint;

    b. Records obtained from the Bureau of Narcotics Investigations in the Pennsylvania Office of the Attorney General, including physician profiles and records of legitimate prescriptions written by those physicians;

    c. Physicians' statements that the prescriptions at issue were unauthorized and contained forged signatures. The prescriptions were sometimes in defendant's name and sometimes in her co-defendants' names;

    d. A blue Sandisk flash drive recovered from defendant's residence, which contained examples of the format for prescriptions, the identifiers for individuals whom defendants used to fill the forged prescriptions, and other pertinent physician and patient information; and

    e. Items found in co-defendant Swint's possession when he was arrested during the time period the indictment covers, including bottles of oxycodone obtained through

---

[1] At the November 10, 2011, evidentiary hearing, defense counsel stated that he did not dispute the facts the government offered to support a finding of probable cause.

forged prescriptions and several ledgers documenting the purchase and sale of pharmaceutical controlled substances, patients' names with dates of birth, and "practice" signatures of physicians' names.

2. The government and defense counsel agree that defendant has struggled with severe drug addiction for many years.

3. Gaudenzia, located at 1306 Spring Garden Street in Philadelphia, provides dual-diagnosis residential treatment to individuals with active substance abuse and mental health issues. Gaudenzia residents are strictly prohibited from using drugs while in treatment and from bringing drugs into the facility.

4. When a resident first arrives at Gaudenzia, she has little freedom. Over time, however, Gaudenzia staff affords residents increasing "movement in the community" so that they can gain responsibility and life skills. Residents who have completed some treatment are often allowed to escort their peers to appointments off Gaudenzia premises.

5. Defendant entered Gaudenzia on June 29, 2011. While there, she participated in regular group and individual counseling sessions in addiction/relapse prevention, anger management, addiction and recovery, and health education, among other things.

6. On August 26, 2011, Pretrial Services Officer Rocky Reyes met with defendant and a Gaudenzia counselor at the request of Gaudenzia staff members. They discussed defendant's abuse of telephone privileges and inappropriate behavior toward male staff and residents. Defendant explained that she had used the phone to resolve a family emergency and promised that she would act appropriately in the future. Defendant was reprimanded, reminded of her obligation to comply with Gaudenzia's rules and regulations, and warned that the Court

would be notified of further behavioral problems. However, Gaudenzia staff did not discharge her at that time.

7. After learning that defendant's roommate had used drugs at the center, Gaudenzia staff discharged the roommate in early September 2011. In connection with her discharge, the roommate told Gaudenzia staff that defendant had also used drugs on Gaudenzia premises. When confronted, defendant admitted that the allegation was true. In late July 2011, she had been permitted to escort her roommate to a welfare appointment. She confessed that the two women went to North Philadelphia, where defendant's roommate bought four bags of heroin. The roommate gave defendant one bag of heroin, which she used that evening at Gaudenzia.

8. Thereafter, Gaudenzia staff learned that defendant had been involved in a second drug-related incident. In both incidents, defendant participated in the purchase of heroin and suboxone, a prescription narcotic used to treat opioid dependence.

9. On September 7, 2011, when defendant called Pretrial Services for her weekly check-in, she told Pretrial Services about the late July 2011 incident. Although she had been in regular communication with Pretrial Services throughout her stay at Gaudenzia, she did not mention her misconduct to Pretrial Services until Gaudenzia staff learned of it.

10. On September 9, 2011, Gaudenzia staff informed Pretrial Services that they would have to discharge defendant unsuccessfully from the program. Gaudenzia counselor DeForest signed a discharge summary stating, among other things, that defendant "demonstrated lack of investment in her recovery process by not sharing in groups as well as deviating and breaking program rules"; "did not admit to [using drugs at Gaudenzia] and had it not been for her peer letting the program supervisor know about the drugs and who used them, she would not have informed anyone of this dangerous behavior"; "has not expressed remorse for the danger

she put other's [sic] in or the danger she could have caused to her self [sic]"; and "appears not to grasp the severity of her actions." At the November 10, 2011, hearing before this Court, Ms. DeForest testified that bringing drugs into the treatment center was a "very serious" violation of Gaudenzia rules.

11. On September 13, 2011, the day defendant was discharged from Gaudenzia, Chief Magistrate Judge Rueter revoked her pretrial release. Defendant has been in custody since that date.

12. Defendant's father, George Bahr, has cancer. At the hearing on November 10, 2011, he testified that he was diagnosed about a year ago and receives chemotherapy three times per month. Bahr testified further that he has trouble performing simple tasks, like climbing stairs. Nonetheless, he is currently the sole caretaker for defendant's thirteen-year-old son, Christian Swint. Bahr's wife died six years ago, and both of Christian's parents are in custody; Christian's father is a co-defendant in this case. According to Bahr, no one else is available to care for Christian, but if granted pretrial release, defendant would provide significant assistance to her father and son.

13. Bahr offered to post his house as collateral to defendant's bail. The house is located at 2731 South 78th Street in Philadelphia and has an estimated value of $95,000.

### IV. CONCLUSIONS OF LAW

The Bail Reform Act, 18 U.S.C. § 3141 et seq., provides for pretrial detention only where a defendant poses a risk of flight or a danger to the community. The Act provides that where "there is probable cause to believe that [a defendant] committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.)," "[s]ubject to rebuttal by the [defendant], it shall be presumed that

6

no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A).

The indictment charges defendant with violating 21 U.S.C. § 846, a provision of the Controlled Substances Act. She faces a maximum term of imprisonment of twenty years. See 21 U.S.C. § 841(b). The rebuttable presumption of 18 U.S.C. § 3142(e)(3)(A) thus applies so long as the Court finds probable cause to believe that defendant committed the offense with which she is charged.

An indictment is "sufficient to support a finding of probable cause triggering the rebuttable presumption . . . under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986). Based on the indictment and the Court's factual findings as stated above, the Court concludes that there is probable cause to believe defendant committed the offense with which she is charged in the indictment.

The presumption of § 3142(e) shifts to defendant only the burden of producing evidence that she is neither a danger to the community nor a flight risk; the burden of persuading the court that she is dangerous or will not appear for trial remains with the government. Id. To rebut the presumption of detention, defendant "must produce some credible evidence forming a basis for [her] contention that [she] will appear and will not pose a threat to the community." United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986). Production of evidence relating to character, family ties, employment, and length of residence in the community may rebut the presumption that she poses a danger to the community. Id. at 561. To meet its burden of persuasion, the government must prove by clear and convincing evidence that defendant is a danger to the community, or by a preponderance of the evidence that she poses a risk of flight if released pending trial. United States v. Himler, 797 F.2d 156, 160-61 (3d Cir. 1986).

7

In this case, the Court concludes that defendant has rebutted the § 3142(e) presumption by producing some credible evidence, including her family ties and the property her father is willing to post as collateral, that she will appear for trial and will not pose a danger to the community.

The Court concludes, however, that the government has demonstrated by clear and convincing evidence that defendant is a danger to the community. There is strong evidence that defendant participated in an extensive scheme to obtain prescription drugs through forgery and deception. Moreover, she has a severe drug addiction. That addiction compelled her to purchase and use illegal drugs at Gaudenzia, despite close supervision and the support of expert staff. Based on defendant's history, it would be very difficult, if not impossible, for her to avoid relapse and additional criminal activity at her father's home, a less controlled environment. For those reasons, defendant poses a danger to the community. The Court further concludes that no condition or combination of bail conditions will reasonably assure the safety of the community. On the other hand, the government has not proved by a preponderance of the evidence that defendant poses a flight risk.

Defense counsel argues that it was unwise for Gaudenzia staff to let defendant and her roommate go to an area "where drug culture is rampant" without staff supervision. As Ms. DeForest testified at the evidentiary hearing, however, that is how Gaudenzia works. Defendant has proposed no other condition of pretrial release that could protect the community more effectively. Defense counsel also contends that defendant is not receiving adequate drug treatment in custody. That is not a sufficient reason to grant pretrial release, and in any case, defendant has not proposed that she receive any treatment if granted pretrial release.

Defendant's most compelling argument is that the needs of her father and son warrant pretrial release. The Court agrees that this is a tragic and difficult case. However, 18 U.S.C. § 3142(e) directs judges to focus on two factors in deciding motions for pretrial release: flight risk and danger to the community. As much as defendant's family might need help, the relevant question in this case is whether she will endanger the community if granted pretrial release. See United States v. Napier, No. 97-214, 1998 WL 770627, at *4 (E.D. Pa. Nov. 4, 1998) (holding that a defendant posed a threat to the community despite his desire to care for a seriously ill companion); United States v. Marks, 947 F. Supp. 858, 865-66 (E.D. Pa. 1996) (holding that religious obligations arising from a defendant's mother's death did not reduce the risk that the defendant would flee if released pending sentencing). Moreover, defendant faces lengthy imprisonment if she is found guilty. It is an unfortunate fact that, in that event, her father and son will need to find a way to cope with her absence. Thus, at the November 10, 2011, hearing, the Court directed counsel to identify and seek support from facilities available to assist defendant's family.

## V.  CONCLUSION

For the reasons stated above, defendant's Motion to Set Bail and to Vacate Order Granting Government's Motion for Detention is denied. An appropriate Order follows.